UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Deviani Ruth Boyce Puga

v. Case No. 1:26-cv-00819-JL-TSM

Superintendent, Strafford County
Department of Corrections, et al.

**ORDER TO CONDUCT BOND HEARING IN IMMIGRATION COURT**

This case concerns whether the government may avoid the judgment in *Guerrero Orellana v. Moniz*, 813 F. Supp. 3d 185 (D. Mass. 2025), *aff'd*, 188 F.4th 1 (1st Cir. 2026), by placing a member of the certified class into expedited removal proceedings after her arrest and detention. When ICE arrested petitioner Boyce Puga in August 2026, she satisfied every element of the *Guerrero Orellana* class definition, as ICE itself recognized by serving her with notice of her class membership. Two weeks later, however, the government initiated expedited removal proceedings against her and now contends that she is no longer entitled to the protections afforded by the class judgment. For the reasons that follow, the court concludes that Boyce Puga's subsequent placement in expedited removal proceedings did not extinguish her class membership or relieve the government of its obligation to comply with the judgment affirmed by the First Circuit Court of Appeals.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 2241 (federal question and habeas corpus). For the reasons stated below, the court grants partial habeas relief by ordering a bond hearing before an Immigration Court.

## I. Background

Boyce Puga is a citizen and national of Panama currently detained at Strafford County Correctional Facility in Dover, New Hampshire. She entered the United States without documentation in January 2025 through the Mexican border and was apprehended by U.S. Customs and Border Patrol (CBP) shortly thereafter.[1] CBP detained Boyce Puga for approximately a week, then released her into the United States on her own recognizance in accordance with 8 U.S.C. § 1226.[2] Though CBP served Boyce Puga with a Notice to Appear before an Immigration Judge in Boston, it never filed that NTA with an Immigration Court to commence removal proceedings against her.[3] Boyce Puga therefore settled in Massachusetts following her release.

In August 2026, the Boston Police Department arrested Boyce Puga for assault and battery on a family/household member. ICE promptly re-detained her "pursuant to sections 236 and 287 of the Immigration and Nationality Act."[4] During the booking process, an ICE officer determined that Boyce Puga "is a class member of the *Guerrero Orellana* class

---

[1] Form I-213 (doc. no. 9-4).
[2] Order of Release on Recognizance (doc. no. 9-2).
[3] *Id.*
[4] Arrest Warrant (doc. no. 9-3).

action" and served her with a "class action membership notice."[5] *See* 813 F. Supp. 3d 185 (D. Mass. 2025), *aff'd*, 188 F.4th 1 (1st Cir. 2026). After fifteen days in custody, ICE re-classified Boyce Puga as subject to expedited removal proceedings under 8 U.S.C. § 1225(b)(1).[6] Boyce Puga completed the credible fear interview process in September 2026 and received an adverse determination from an asylum officer, which is currently pending review by an Immigration Judge.[7] *See* 8 U.S.C. § 1225(b)(1)(A)(ii) (outlining the screening process for expedited removal cases). ICE continues to detain Boyce Puga in the meantime.

Boyce Puga now petitions this court for habeas relief, asserting that her continued detention is unlawful, including because she has "not been given any bond hearing, nor [] the opportunity to request one."[8] The respondents oppose the petition, arguing that Boyce Puga is subject to expedited removal and, accordingly, mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2).

## II. Ruling and Order

The First Circuit Court of Appeals has affirmed that members of the class certified in *Guerrero Orellana v. Moniz* "are not subject to detention under 8 U.S.C. § 1225(b)(2)." 813 F. Supp. 3d 185, 199 (D. Mass. 2025), *aff'd*, 188 F.4th 1 (1st Cir. 2026). *Guerrero Orellana* class membership extends to all noncitizens arrested in Massachusetts (or subject to the jurisdiction of an Immigration Court located in Massachusetts) where that person (a) "is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in" the proceedings that follow a credible fear of persecution finding under 8 U.S.C. § 1225(b)(1)(B)(ii); (b) was not "paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry"; (c) subject to mandatory detention under 8 U.S.C. § 1226(c); (d) "subject to post-final order detention under 8 U.S.C. § 1231"; and (e) has been "continuously detained" following an arrest at the border. *Id.* at 198-99.

Boyce Puga met every element of that class definition at the time ICE arrested and re-detained her in August 2026. When CBP encountered Boyce Puga shortly after entry, it chose not to pursue expedited removal, and released her "on bond under § 1226(a), rather than humanitarian parole under 8 U.S.C. § 1182(d)(5)(A)." *Loja v. FCI Berlin, Warden*, 808 F. Supp. 3d 227, 230 (D.N.H. 2025). In so doing, the government "elected not to use [the] mechanism" that "Congress provided… for paroling applicants for admission into the United States without changing their status [namely, humanitarian parole]." *Id.* (quoting *De Andrade v. Moniz*, 802 F. Supp. 3d 325, 332 (D. Mass. 2025). The government subsequently declined to file the NTA it issued Boyce Puga with the Immigration Court. Accordingly, when ICE arrested Boyce Puga in August 2026, the government had not yet commenced any removal proceedings—expedited or otherwise—against her. Nor had the government "reserve[d] [its] right" to initiate expedited removal proceedings at that time by paroling her into the United States back in 2025. *Id.* (quoting *De Andrade*, 802 F. Supp. 3d at 332). The remaining criteria (subject to § 1226(c) detention, under a final order of removal, or continuously detained after arrival) are similarly inapplicable and, in any event, are not

[5] Form I-213 (Aug. 4, 2026) (doc. no. 9-4).
[6] Notice and Order of Expedited Removal (Aug. 19, 2026) (doc. no. 9-5).
[7] Notice of Referral to Immigration Judge (doc. no. 9-10).
[8] Pet. (doc. no. 3) at 7.

invoked by the government to justify Boyce Puga's current detention.

Boyce Puga was therefore a class member when ICE detained her, as ICE itself recognized by serving her with the class notice. Only after two weeks of detention did ICE change its position and place her in expedited removal. The respondents now say that subsequent re-categorization removed her from the class. But the *Guerrero Orellana* judgment forecloses that result. It specifically provides that "[a]fter joining the class, the member of the certified class shall remain subject to this order notwithstanding any subsequent change in their location, facility of detention, or venue of immigration proceeding." 813 F.3d at 199. That language fixes class membership as of the moment the person joins the class, and it protects that status from later shifts the government controls. The exclusion for those subject to § 1225(b)(1) applies to those who are already "*in* an Expedited Removal process" at the time they are detained, not to class members against whom the government later decides to commence that process. *Guerrero Orellano,* 813 F. Supp. 3d at 199 (emphasis added).

In *Guerrero Orellano*, the court declared that class members are not subject to detention under § 1225(b)(2), and that the government's policy of detaining them under that provision without bond consideration is unlawful. The First Circuit Court of Appeals has affirmed that judgment, and the respondents are bound to its terms. Permitting the respondents to circumvent *Guerrero Orellano* by moving any class member into expedited removal after the fact would effectively render compliance with that judgment optional. The court cannot countenance such a result so long as *Guerrero Orellano* remains the law of this circuit.

The respondents are therefore **ORDERED** to provide Boyce Puga with a bond hearing under 8 U.S.C. § 1226(a) as soon as practicable. The bond hearing shall be conducted in accordance with the procedural protections set forth in *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021), with DHS bearing the burden of proving, by clear and convincing evidence, that Boyce Puga poses a danger to the community, or, by a preponderance of evidence, that she poses a flight risk. The petition[9] is DENIED in all other respects. The parties shall file a status report on or before **November 2, 2026**.

SO ORDERED.

Joseph N. Laplante
United States District Judge

Dated: October 21, 2026
Cc: Counsel of record.

[9] Doc. no. 3.